UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                    CASE NO. 6:25-cr-119-JA-DCI-1

VEDOUTIE HOOBRAJ,

      Defendant.

_____/


**MOTION TO DISMISS AND MOTION TO DECLARE STATUTE AS
BEING UNCONSTITUTIONAL AS APPLIED TO MS. HOOBRAJ**

The Defendant, VEDOUTIE HOOBRAJ (hereinafter sometimes referred to as "Ms. Hoobraj"), by and through her undersigned counsel, respectfully moves this Honorable Court, pursuant to Fed. R. Crim. P. 12(b)(3)(B), to dismiss the Indictment charging her under 18 U.S.C. § 1425(a) on grounds that (1) the Indictment fails to state an offense, (2) the alleged misrepresentation was not knowing or material under Maslenjak v. United States, 582 U.S. 335 (2017), and (3) Ms. Hoobraj's case is materially distinguishable from United States v. Izquierdo, 853 F. App'x 361 (11th Cir. 2021), and (4) the statute, as applied to Ms. Hoobraj, violates the Fifth

Amendment's Due Process and Self-Incrimination Clauses. In support thereof, the Defendant states as follows:

## I. FACTUAL BACKGROUND

1.      Ms. Hoobraj is charged in Count One of the Indictment (Doc. 1) with Procurement of Citizenship or Naturalization Unlawfully in violation of 18 U.S.C. § 1425 (a).  That offense is punishable by up to ten (10) years in prison and a $250,000 fine.

2.      The Government alleges that, on or about July 18, 2017, Ms. Hoobraj knowingly made a materially false representation on her Form N-400 Application for Naturalization, by denying that she had "ever committed, assisted in committing, or attempted to commit, a crime or offense for which [she had] not been arrested."  Attached hereto as Exhibit A is page 14 of 20 of the Form N-400 where Ms. Hoobraj was required to answer Part 12, Question 22.

3.      The Government alleges that Ms. Hoobraj signed her Form N-400 on June 7, 2016, appeared for her naturalization interview on July 6, 2017, and was issued Certificate of Naturalization No. 39036966 on July 18, 2017.

4.      At all relevant times–application, interview, and oath–Ms. Hoobraj had not been accused, charged, or arrested for any offense.  She had not

2

admitted guilt nor been advised that her prior conduct constituted a crime. No governmental investigation was pending. No authority had characterized any of her past conduct as criminal.

5. On August 10, 2017, an Indictment was filed in the Southern District of New York charging Ms. Hoobraj with Wire Fraud. Subsequently, Ms. Hoobraj entered a plea and was sentenced to twenty-four (24) months of incarceration to be followed by three (3) years of Supervised Release. Additionally, Ms. Hoobraj was ordered to pay $47,741.00 in restitution, which she is currently still paying.

6. The conduct underlying the wire fraud charge was completed before Ms. Hoobraj applied for naturalization. Ms. Hoobraj was not engaged in any ongoing criminal activity during the naturalization process.

## II. LEGAL STANDARD

7. To obtain a conviction under 18 U.S.C. § 1425(a), the Government must prove that Ms. Hoobraj:

    A.    Procured or attempted to procure citizenship through naturalization,

    B.    Committed an illegal act in connection with that procurement;

3

C.    Did so knowingly; and

D.    The illegal act played a role in obtaining citizenship.

See Pattern Jury Instruction (11th Cir.); Maslenjak v. United States, 137 S.Ct. 1918, 1923 (2017).

<div align="center">

### III. ARGUMENT

</div>

**A.    The Alleged Statement Was Not "Knowingly False"**

8.    Section 1425(a) criminalizes knowing procurement of naturalization "contrary to law". United States v. Puerta, 982 F.2d 1297 (9th Cir. 1992). The critical question is: How can Ms. Hoobraj "knowingly" make a false statement about criminal conduct when no authority has identified that conduct as criminal?

9.    At the time Ms. Hoobraj completed her Form N-400 in June 2016 and took her naturalization oath in July 2017, no governmental entity had alleged criminal conduct, and she had not been arrested. Thus, her answer to a question framed in the past tense – "Have you ever committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested?" – was literally and objectively true at those times.

10.    The question's use of the past tense "were not arrested" is dispositive. It inquires about the applicant's status at the time of answering,

<div align="center">4</div>

not about potential future prosecutorial actions. Ms. Hoobraj had not been arrested. Her answer was accurate.

11.   Courts have consistently held that 18 U.S.C. § 1425 requires knowledge of the facts that make the conduct illegal, not merely later awareness that authorities have decided to prosecute it.  U.S. v. Pasillas-Gaytan, 192 F.3d 864, 868 (9th Cir. 1999).

12.   In Pasillas-Gaytan, the Ninth Circuit held that § 1425 requires proof that the defendant either (1) "knew he was not eligible for naturalization due to his prior conviction," or (2) "knowingly misrepresented his criminal record." Id. at 869.   The court emphasized that the statute requires "knowledge of facts that make his conduct illegal," not mere awareness of prosecution.  Id. at 868.  Following Stapes v. United States, 511 U.S. 600 (1994), the court held that "a defendant must know the facts that make his conduct illegal." Id. at 869.

13.   The Ninth Circuit further explained that dispensing with a mens rea requirement "would criminalize completely innocent conduct and would essentially impose strict liability on defendants." Pasillas-Gaytan, 192 F.3d at 868. It would apply to "defendants who did not understand the documents they were signing," those "who innocently apply for citizenship outside of the

statutory time periods," and those with insufficient English proficiency. Id.

14.    Ms. Hoobraj cannot have "knowingly misrepresented" conduct that no authority had identified as criminal. At the time of her application and naturalization:

   a.    No investigation was pending;

   b.    No charges had been filed;

   c.    No arrest had occurred;

   d.    No authority had alleged wrongdoing; and

   e.    Ms. Hoobraj had no factual basis to know her conduct would later be characterized as criminal.

15.    The Government's theory would require applicants to be omniscient about future prosecutorial interpretations of their past conduct- a standard Pasillas-Gaytan expressly rejected.

16.    The Eleventh Circuit's recent decision in United States v. Munoz, 112 F.4th 923, 933-34 (11th Cir. 2024) (quoting United States v. McIntosh, 580 F.3d 1222 (11th Cir. 2009)), reinforces the principle that statements about conduct not yet legally established as criminal cannot form the basis for § 1425 prosecution.  In Munoz, the Court examined whether statements about the timing of criminal conduct were legally material to naturalization

6

proceedings.  The Court held that "the date of an alleged offense is only material in reference to the bar of limitation and to show that the offense was committed anterior to the presentment of the indictment" and that "the date of the offense [is] not an essential element of the offense."

17.    Here, as in Munoz, the Government seeks to criminalize a statement based on facts that were not legally established at the time the statement was made. Ms. Hoobraj's case is even stronger than Munoz because she had no basis whatsoever to believe her conduct was criminal–no investigation, no charge, no arrest, and no admission.

18.    The question's use of past tense ("were not arrested") confirms that it inquires about the applicant's status at the time of application, not potential future prosecutorial actions. To hold otherwise would premit retroactive criminalization of truthful statements based solely on subsequent events-a result foreclosed by both Maslenjak and Munoz.

**B.    Ms. Hoobraj's Case Is Materially Distinguishable from United States v. Izquierdo**

19.    The Government will likely cite United States v. Izquierdo, 853 F. App'x 361 (11th Cir. 2021), but that case is readily distinguishable and actually supports dismissal here.

20.    In <u>Izquierdo</u>, the defendant was actively engaged in an ongoing wire fraud conspiracy from January 2014 through January 2017. He naturalized in September 2016- while the conspiracy was ongoing. The Eleventh Circuit found his "No" answer false because "<u>Izquierdo</u> had committed and was continuing to commit crimes and offenses for which he had not been arrested." Id. at 362 (emphasis added).

21.    The temporal overlap between <u>Izquierdo's</u> ongoing criminal conduct and his naturalization process was the critical fact. He was asked whether he had ever committed crimes for which he was not arrested, and at that very moment, he was actively conspiring to commit wire fraud. His answer was objectively false when made.

22.    Ms. Hoobraj's situation is fundamentally different:

A.    She was not engaged in any ongoing criminal conduct during her naturalizaiton process;

B.    The conduct underlying the wire fraud charge was completed before she applied for naturalization;

C.    She signed her application in June 2016 and naturalized in July 2017;

8

D.      At both times, she had not been arrested, charged, or accused of any crime;

E.      She was indicted twenty-three days after naturalization, in August 2017.

23.     Unlike <u>Izquierdo</u>, who was actively committing crimes during his naturalization and could not truthfully deny ongoing criminal conduct, Ms. Hoobraj truthfully answered that she had not been arrested for any past conduct. The question asks "have you ever committed...a crime...for which you were NOT arrested?"- using the past tense "were," not "will be."

24.     <u>Izquierdo</u>  stands for the unremarkable proposition that one cannot deny ongoing criminal conduct during the naturalization process. It does not hold-and cannot hold-that applicants must predict future prosecutorial decisions about completed past conduct for which they have never been arrested or accused.

25.     Moreover, <u>Izquierdo</u> involved a guilty plea reviewed only for plain error, not a motion to dismiss challenging whether the indictment stated an offense. The Eleventh Circuit never analyzed whether the government adequately alleged a knowing and material falsehood-it only assessed whether the plea colloquy adequately informed the defendant of the

consequences of his plea. That procedural posture is materially different from the threshold question presented here.

**C.    The Alleged Misrepresentation Was Not Material Under <u>Maslenjak v. United States</u>**

26.    In <u>Maslenjak v. United States</u>, 137 S. Ct. 1918 (2017), the Supreme Court held that § 1425(a) requires proof that the illegal act actually influenced the decision to grant naturalization.  A falsehood must either:

a.    Conceal a fact that directly disqualifies the applicant (direct-disqualification theory), or

b.    Be relevant enough that a reasonable officer would have investigated and that investigation would predictably have revealed a disqualifying fact (investigation-based theory).

The Government cannot satisfy either route.

27.    At the time of Ms. Hoobraj's application in June 2016 and naturalization in July 2017, no arrest or conviction existed; thus, no disqualifying fact could have been concealed.  As the Eleventh Circuit explained in <u>Munoz</u>, 112 F.4th at 933 (quoting <u>Bobby v. Bies</u>, 556 U.S. 825, 835 (2009)) the starting date of alleged criminal conduct is "unnecessary" to the legal determination of eligibility because "the final outcome" does not

"hinge on it" when the conduct has not yet been legally established as criminal.

28.    An applicant cannot conceal what does not exist. At the time Ms. Hoobraj answered Question 22, there was no arrest to report, no charge to disclose, and no investigation to reveal. The Government's theory improperly conflates completed conduct with criminal conduct. Not all conduct is criminal, and conduct does not become criminal until a legal authority so determines.

29.    Because there was no known or alleged crime at the time of application, and because Ms. Hoobraj was not engaged in any ongoing criminal activity, her truthful "No" answer could not have prompted an investigation or affected the outcome.

30.    The Eleventh Circuit has consistently required a causal link between the misrepresentation and naturalization. U.S. v. Jean-Baptiste, 395 F. 3d 1190 (11th Cir. 2005). Here, that link is absent-the Government seeks to punish a statement that played no role in Ms. Hoobraj's acquisition of citizenship.

31.    The contrast with Izquierdo is dispositive. There, the defendant concealed ongoing criminal activity-a fact that was material because USCIS could have discovered and potentially stopped the ongoing conspiracy, or at

11

minimum denied naturalization while criminal conduct continued. Here, Ms. Hoobraj's past conduct was complete. Even if she had somehow divined that prosecutors might later characterize her completed conduct as criminal, disclosure would not have "predictably led to other facts warranting" denial of naturalization. Maslenjak, 137 S. Ct. at 1928.

32.    The Government cannot show that USCIS would have investigated uncharged, unarrested, and unalleged conduct that was not ongoing, nor that any such investigation would have "predictably" led to discovering the specific facts underlying the later wire fraud charge.  Without ongoing conduct to investigation or arrest records to discover, Mr. Hoobraj's answer could not have been material to the naturalization decision.

33.    Munoz is directly on point.  There, the Court held that because the date of the defendant's criminal conduct was "legally immaterial to the conspiracy charge," it could not serve as a basis for collateral estoppel in denaturalization proceedings.   Munoz, 112 F.4th at 936.   The Court emphasized that "the District Court had no need to establish the starting date to ensure that it has a factual basis" for the proceedings.  Id.

34.    Similarly here, Mr. Hoobraj's statement about conduct "for which [she had] not been arrested" was legally immaterial to her naturalization

12

because it accurately reflected her status at that time.  To hold otherwise would permit the Government to retroactively convert truthful statements into false ones based solely on subsequent prosecutorial decisions–a result foreclosed by both Maslenjak and Munoz.

35.    The Eleventh Circuit in Munoz recognized the danger of allowing the Government to impose legal consequences based on facts that were not essential to prior determinations.  The Court held that accepting the Government's position "would create the perception that either the first or second Court was misled," threatening "judicial integrity." Id. at 936-37 (Citing New Hampshire v. Maine, 532 U.S. 742, 751 (2001)).  The same concern applies here: allowing prosecution based on Ms. Hoobraj's truthful answer undermines confidence in the naturalization process and creates arbitrary enforcement.

**D. The Government's Theory Would Create an Impossible and Unconstitutional Standard**

36.    Accepting the Government's position would require every naturalization applicant to:

> A.    Predict which of their past business dealings, statements, or conduct might someday be characterized as criminal by

prosecutors;

B.     Confess to potential crimes that no authority has identified;

C.     Effectively waive the presumption of innocence by assuming guilt for uncharged conduct;

D.     Answer questions about their future arrest status rather than their past arrest status.

37.     This standard is unworkable and unconstitutional.  As Pasilla-Gaytan recognized, such an interpretation "would criminalize completely innocent conduct and would essentially impose strict liability." 192 F.3d at 868.

38.     The question asks about crimes "for which you were NOT arrested"–not "for which you might someday be arrested" or "for which you could theoretically be arrested." Ms. Hoobraj answered truthfully: she has not been arrested.  The Government cannot transmute a truthful answer into perjury through subsequent charging decisions made weeks after naturalization.

39.     If the Government's theory were accepted, every naturalized citizen would be at risk of denaturalization based on post-naturalization prosecutorial decisions about pre-naturalization conduct.  This would (a)

14

render naturalized citizenship perpetually provisional and insecure; (b) chill legitimate applications for naturalization; (c) create a two-tiered citizenship system where naturalized citizens lack the security of natural-born citizens; (d) vest prosecutors with unreviewable power to retroactively criminalize truthful statements.

### E. The Statute is Unconstitutional As Applied to Ms. Hoobraj Lack of Fair Notice and Due Process

40.    Applying § 1425(a) to Ms. Hoobraj violates due process because it retroactively criminalizes a literally truthful statement based on later prosecutorial characterizations of past conduct.

41.    The Fifth Amendment forbids punishment without clear notice of what conduct is criminal.  Bouie v. City of Columbia, 378 U.S. 347 (1964). When Ms. Hoobraj answered "No," she had no notice that truthful answers about her arrest status could later be deemed false once the Government decided to charge her with conduct that has occurred in the past and was completed.

42.    Due process requires that criminal statutes provide "a person of ordinary intelligence fair notice of what is prohibited." United States v. Williams, 553 U.S. 285, 304 (2008).  Here, a person of ordinary intelligence

15

reading Question 22 would understand it to ask: "Have you ever been arrested for any crimes you committed?" The answer to that questions was unambiguously "No" when Ms. Hoobraj signed her application and when she naturalized.

43.    No reasonable person would interpret the question to mean: "Have you engaged in any conduct that prosecutors might someday, after your naturalization, decide to charge as a crime?" Such an interpretation would require applicants to: (a) possess legal expertise to predict future prosecutorial theories; (b) assume that their past conduct was criminal despite no investigation, charge, or arrest; and (c) confess to hypothetical future charges.

44.    This violates the fundamental priniciple that citizens must have fair warning of what the law requires.  "No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes." Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).

45.    Unlike Izquierdo, which challenged onl the immigration form itself, Ms. Hoobraj challenges the statute's application to criminalize truthful answers.  Izquierdo, 853 F. App'x at 365.  The void-for-vagueness doctrine applies to "laws that define criminal offenses." Id. Section § 1425(a) is

16

precisely such a law, and as applied here, it fails to provide fair notice that truthful statements can become criminal based on future events.

46.    Form N-400 question's phrase "for which you were not arrested" creates fatal temporal ambiguity when combined with the Government's interpretation.  If prosecutors can reinterpret "were not arrested" to mean "will ever be arrested" or "could theoretically be arrested," the statute becomes void for vagueness as applied.   Such indeterminacy permits arbitrary enforcement, contrary to Kolender v. Lawson, 461 U.S. 352 (1983).

47.    The constitutional requirement of definiteness is violated when enforcement authorities have "standardless" discretion to determine what conduct is prohibited.  Id. at 358.  Here, the Government seeks to vest prosecutors with unreviewable discretion to decide, years after naturalization, that an applicant's truthful answer was actually false based on the prosecutor's retrospective characterization of the applicant's past conduct.

48.    Criminalizing truthful or temporally accurate answers chills lawful applicants from naturalization out of fear that future allegations could retroactively convert honesty into fraud.  The Supreme Court has recognized that "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly

17

marked." <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 109 (1972) (internal quotation omitted).

49.    Under the Government's theory, a prudent applicant would be forced to disclose every business transaction, every statement, and every interaction that could conceivably be later characterized as criminal, even absent any indication that the conduct was unlawful.  This creates an impossible burden and defeats the purpose of the naturalization process.

**F. The Statute, as Applied, Violates the Fifth Amendment Right Against Self-Incrimination**

50.    The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." This protection extends beyond the courtroom to any governmental inquiry where answers might furnish a link in the chain of evidence leading to crimninal prosecution. <u>Lefkowitz v. Turley</u>, 414 U.S. 70, 77 (1973); <u>Marchetti v. United States</u>, 390 U.S. 39 (1968).

51.    While <u>Izquierdo</u> noted that the "exculpatory no" doctrine was eliminated in <u>Brogan v. United States</u>, 522 U.S. 398 (1998), Ms. Hoobraj's argument is fundamentally different.  She does not claim a right to lie to federal investigators.  Rather, she argues that the Government cannot compel

disclosure of uncharged, unarrested conduct and then prosecute her for failing to predict that such conduct would later be characterized as criminal.

52.    Form N-400's question 22 ("Have you ever committed, assisted in committing, or attempted to commit a crime or offense for which you were not arrested?") forces applicants to choose between:

A.    Incriminating themselves by admitting to conduct that no authority has identified as criminal thereby potentially triggering investigation and prosecution, or

B.    Answering based on their current status (not arrested) and risking later prosecution under § 1425(a) if prosecutors subsequently decide to charge them.

53.    This compulsion violates the Fifth Amendment.  The Supreme Court has repeatedly condemned statutory schemes that force an individual to "surrender one constitutional right as the price of exercising another." Garrity v. New Jersey, 385 U.S. 493 (1967) Spevack v. Klein, 385 U.S. 511 (1967).

54.    The Government cannot condition a benefit – here, naturalization– on waiving constitutional rights.   "[T]he government may not impose substantial penalties because a witness elects to exercise his Fifth

Amendment right not to give incriminating testimony against himself." Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977).

55.    Ms. Hoobraj was compelled to answer under oath, on pain of denial of naturalization, a question that the Government now claims required her to disclose conduct for which she had never been arrested and which no authority had identified as criminal.  By criminalizing her truthful answers about her arrest status, the Government has used § 1425(a) as a tool to punish her for not incriminating herself, in violation of the Fifth Amendment.

**G. Even Assuming the Facts as Alleged, the Indictment Fails to State an Offense**

56.    Even taking the allegations as true, Ms. Hoobraj's answer does not constitute an offense under § 1425(a).  The alleged statement was (1) not knowingly false, (2) not material, and (3) did not cause her to obtain citizenship.

57.    Under United States v. Critzer, 951 F.2d 306 (11th Cir. 1992), dismissal is required when an indictment fails to allege facts that constitute a federal crime.  In Munoz, 112 F.4th at 933-34, the Eleventh Circuit vacated a denaturalization order because the starting date of the defendant's criminal conduct was not necessary to the prior judgment, rendering collateral

20

estoppel unavailable.  The Court held that absent proof that the statement was legally material and factually necessary to the decision, denaturalization cannot stand.  Id.

58.    The same result is required here.  The Government has alleged no facts showing that Ms. Hoobraj's answer–which was literally true at the time she made it–was necessary to, or played any role in, the decision to grant her citizenship.  Without such proof, the Indictment fails to state an offense under § 1425(a).

59.    The Indictment alleges only that Ms. Hoobraj answered "No" to Question 22 and that she was later charged with wire fraud.  It does not allege:

> A.    That Ms. Hoobraj knew her conduct was criminal when she applied;
>
> B.    The she knew she was ineligible for naturalization;
>
> C.    The her answer influenced USCIS's decision;
>
> D.    The USCIS would have investigated has she answered differently;
>
> E.    That any investigation would have revealed disqualifying facts;

21

F.    That her conduct was ongoing during the naturalization process.

60.    These omissions are fatal.  The Indictment fails to allege the essential elements of knowledge and materiality required by <u>Maslenjak</u> and fails to distinguish this case from <u>Izquierdo's</u> ongoing criminal conduct scenario.

### IV. Conclusion

61.    The Eleventh Circuit's decision in <u>United States v. Munoz</u>, <u>United States v. Izquierdo</u>, combined with the Supreme Court's holding in <u>Maslenjak</u> and the Ninth Circuit's reasoning in <u>Pasillas-Gaytan</u>, establish clear principles that control this case:

A. Statements about conduct that has not been legally established as criminal at the time they are made, and that is not ongoing during the naturalization process, cannot form the basis for § 1425(a) prosecution.

B. Only statements that are legally material to an necessary to the naturalization decision can support denaturalization or criminal prosecution under § 1425(a).

C. The statute requires proof that the defendant knew facts that made her ineligible for naturalization or knowingly misrepresented material

22

facts–not that she failed to predict future prosecutorial decisions.

D. Retroactive application of criminal liability to truthful statements threatens judicial integirty and vilates fundamental fairness, due process, and the Fifth Amendment.

62.    Ms. Hoobraj is not Rafael Izquierdo.  She was not engaged in ongoing criminal conduct during her naturalization.  She truthfully answered that she had not been arrested.  She had no reason to know that prosecutors would, weeks after her naturalization, decide to charge her with crimes based on completed past conduct.

63.    Because the Indictment fails to allege a materially false or knowingly deceptive act, because the alleged statement was not material to the naturalization decision, and because § 1425(a), as applied, violates Ms. Hoobraj's constitutional rights to due process and against self-incrimination, the Court should dismiss Count One with prejudice.

WHEREFORE, the Defendant respectfully requests this Court grant her Motion to Dismiss and Motion to Declare Statute as being Unconstitutional as applied to Ms. Hoobraj.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 11th day of November, 2025, we

have electronically filed the foregoing with the Clerk of the Court by using the

CM/ECF system which will send a notice of electronic filing to the following:

Megan Testerman, Assistant United States Attorney, United States Attorney's

Office, 400 W. Washington Street, Suite 3100, Orlando, FL 32801,

Megan.Testerman@usdoj.gov.   We further certify that we mailed the

foregoing document and the notice of electronic filing by first-class mail to the

following non-CM/ECF participants:  N/A.

<div style="margin-left:50%">

s/Matthew P. Ferry
MATTHEW P. FERRY, of
LINDSEY, FERRY & PARKER, P.A.
341 N. Maitland Avenue, Suite 130
Maitland, FL 32751
*Mail:*  P.O. Box 505
Winter Park, FL 32790
Telephone:  (407) 644-4044
Facsimile:  (407) 599-2207
Attorneys for the Defendant.
matt@lindseyferryparker.com
Florida Bar No. 28950

</div>

24