UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                                  CASE NO. 6:25-cr-119-JA-DCI

VEDOUTIE HOOBRAJ

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The defendant Vedoutie Hoobraj moves to dismiss the indictment and to declare the statute at issue, 18 U.S.C. § 1425(a), unconstitutional as applied to her. Doc. 31 ("Motion"). For the reasons stated below, the Motion should be denied.[1]

## BACKGROUND

Should this case proceed to trial, the United States submits it could establish these facts: From October 2014 through at least March 2016, the defendant participated in a blatantly criminal and abhorrent scheme to defraud while living in New York: the defendant pretended to suffer from terminal cancer and solicited donations totaling approximately $50,000 under the guise that she needed money for living and medical expenses. *United States v. Vedoutie Hoobraj*, Case No. 7:18-cr-00025-VB ("S.D.N.Y. Case"), Doc. 2 (S.D.N.Y. Aug. 10, 2017). To carry out her scheme, she fabricated both her diagnosis and treatment from multiple doctors who never

---

[1] Under the Court's criminal scheduling order, before the filing of any motion in a criminal case that is not an *ex parte* motion, the moving party is required to confer with opposing counsel and include in the motion a certificate of conferral. Doc. 19, p. 6. Failure to do so can result in denial without prejudice. *Id.* Here, defense counsel never conferred with the undersigned counsel, and the Motion lacks the required certificate of conferral. *See* Doc. 31. So in addition to the reasons detailed herein, the Motion is also due to be denied on that basis.

actually treated her. *Id.* The scheme also involved a local fundraiser and the creation of fundraising sites that included false claims about her diagnosis—including that she only had 18 months to live—and photos of the defendant without hair. *Id.*

In January 2016, the defendant was interviewed by local law enforcement in New York. *Id.* During the interview, the defendant maintained that she had terminal cancer and made false statements about her treating doctors. *Id.* She even presented forged medical records. *Id.* However, the truth was that the defendant never actually had cancer and that she used the donated money for her ordinary living and businesses expenses, not for any medical treatment. *Id.*

In February 2016—the month after she was interviewed by law enforcement in New York—the defendant moved to Florida. *See* Ex. 1, p. 3. While in Florida, on June 7, 2016, the defendant signed a U.S. Citizenship and Immigration Services Application for Naturalization, Form N-400. *See* Ex. 1. In Part 12 the defendant answered "No" to Question 22, which asked "Have you EVER committed, assisted in committing, or attempted to commit, a crime or offense for which you were NOT arrested?" *Id.* at 14. Before submitting the form, the defendant confirmed she could read and understand English and that she read and understood every question and her answers. *Id.* at 16. The defendant also certified, under penalty of perjury, that she understood all the information in the application and that all the information is complete, true, and correct. *Id.* at 17. The application was received on July 14, 2016.

The defendant was interviewed by an Immigration Services Officer on July 6, 2017. During the interview, the defendant was placed under oath and asked to

confirm the answers provided on her Form N-400. She did not provide any corrections to Question 22. At the conclusion of the interview, she signed a certification stating: "I swear (affirm) and certify under penalty of perjury under the laws of the United States of America that I know that the contents of this Form N-400, Application for Naturalization, subscribed by me, including the corrections displayed above, are complete, true, and correct." The defendant's Form N-400 was approved, and on July 18, 2017, the defendant was admitted as a U.S. citizen.

In August 2017, the defendant was interviewed by a Special Agent with the Federal Bureau of Investigation about the conduct in New York. *See* S.D.N.Y. Case, Doc. 2. During the interview, the defendant acknowledged that she knew she did not have cancer during the period when the fundraising solicitations were made. *Id.* The defendant also stated that she "made a mistake" that she wished she could take back. *Id.* That same day, a criminal complaint was issued against her in the Southern District of New York for her participation in the multi-year fraudulent scheme outlined above, in violation of 18 U.S.C. §§ 1343 and 2. *Id.*

On January 12, 2018, an information was filed against the defendant charging her with "willfully and knowingly" engaging in the wire fraud scheme occurring from at least in or about October 2014 through at least March 2016 in the Southern District of New York, in violation of 18 U.S.C. §§ 1343 and 2. *See* S.D.N.Y. Case, Doc. 15. That same day, the defendant entered a plea of guilty to the offense. *See* S.D.N.Y. Case, Docs. 16, 18. The defendant was then sentenced to 24 months' imprisonment for the conduct on July 13, 2018. *See* S.D.N.Y. Case, Doc. 26.

3

On April 30, 2025, a grand jury returned an indictment charging the defendant with one count of procurement of citizenship or naturalization unlawfully, in violation of 18 U.S.C. § 1425(a). Doc. 1. The unlawful conduct the defendant engaged in to procure naturalization was alleged as: "having knowingly made a materially false representation on her Form N-400, Application for Naturalization, and in sworn statements to immigration and naturalization officials, including that she had never committed, assisted in committing, or attempted to commit, a crime or offense for which she was not arrested." *Id.*

Now, the defendant moves to dismiss the indictment and to declare 18 U.S.C. § 1425 unconstitutional as applied to her. *See* Doc. 31. This response follows.

**ARGUMENT**

The defendant—with citation to only one case involving a motion to dismiss—argues the indictment should be dismissed for four reasons: (1) the indictment fails to state an offense; (2) the alleged misrepresentation was not knowing or material under *Maslenjak v. United States*, 582 U.S. 335 (2017); (3) her case is materially distinguishable from *United States v. Izquierdo*, 853 F. App'x 361 (11th Cir. 2021); and (4) the statute, as applied to her, violates the Fifth Amendment. Doc. 31. The United States takes up the first two arguments together before addressing the *Izquierdo* case and the defendant's constitutional challenge.[2]

---

[2] Although the first page of the Motion presents the four arguments in this order, the rest of the Motion presents them in a wholly different order. *See* Doc. 31. This response tracks the order of the arguments presented on page 1 of the Motion.

### A.    The Indictment Sufficiently States an Offense

The defendant argues the indictment fails to state an offense, but the Motion fails to lay out or apply the proper standard for dismissal on this ground. *See* Doc. 31, pp. 20–22. When a defendant moves to dismiss an indictment for failure to state an offense, a court must determine whether the indictment *on its face* contains the elements of the charged offense and sufficiently apprises the defendant of the nature of the charge. *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006); *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("The sufficiency of a criminal indictment is determined from its face." (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)). Courts may only dismiss an indictment if the factual allegations, viewed in the light most favorable to the government, are insufficient to charge the offense as a matter of law. *See United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

An indictment is sufficient if it: (1) "presents the essential elements of the charged offense"; (2) "notifies the accused of the charges to be defended against"; and (3) "enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for a subsequent prosecution for the same offense." *United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999) (citations omitted). Whether an indictment sufficiently alleges a crime is not a "demanding" standard: "An indictment tracking the statutory language and stating approximately the time and place of an alleged crime is sufficient." *United States v. Moore*, 954 F.3d 1322, 1332 (11th Cir. 2020) (citation omitted); *Critzer*, 951 F.2d at 308 ("Constitutional requirements are fulfilled

5

'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" (citation omitted)).

Courts may not dismiss an indictment on the ground of insufficient evidence. *See Critzer*, 951 F.2d at 307; *see also United States v. Baxter*, 579 F. App'x 703, 705 (11th Cir. 2014). Indeed, "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *Salman*, 378 F.3d at 1268 (quoting *Critzer*, 951 F.2d at 307). As such, in considering a motion to dismiss for failure to state an offense, a court "may not look beyond the four corners of the indictment," including to exhibits or allegations made by the defendant. *Baxter*, 579 F. App'x at 706.

The statute at issue in the indictment is 18 U.S.C. § 1425(a). *See* Doc. 1. Section 1425(a) makes it unlawful to "knowingly procure[] or attempt[] to procure, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." 18 U.S.C. § 1425(a). A defendant can be found guilty of this crime if the following facts are proved beyond a reasonable doubt: (1) the defendant knowingly procured or attempted to procure; (2) contrary to law; (3) the naturalization of any person or documentary or other evidence of naturalization or citizenship. *See* Eleventh Cir. Crim. Pattern Jury Instr. O120 (2025). In addition to those facts, the government must prove that an illegal act by the defendant played some role in her acquisition of citizenship—materiality. *See Maslenjak v. United States*, 582 U.S. 335, 338 (2017). In cases like this, where the illegal act is making a false statement, the government must show "the defendant lied about facts that would have mattered to an immigration

6

official, because they would have justified denying naturalization or would predictably

have led to other facts warranting that result." *Id.*

Here, the allegations in the indictment on its face are sufficient to state an

offense. Specifically, the indictment alleges:

> On or about July 18, 2017, in the Middle District of Florida, the defendant,
>
> VEDOUTIE HOOBRAJ,
>
> did knowingly procure, contrary to law, her naturalization, citizenship, and documentary and other evidence of naturalization and of citizenship, having knowingly made a materially false representation on her Form N-400, Application for Naturalization, and in sworn statements to immigration and naturalization officials, including that she had never committed, assisted in committing, or attempted to commit, a crime or offense for which she was not arrested.
>
> In violation of 18 U.S.C. § 1425(a).

Doc. 1. As such, the indictment includes the approximate date and place of the

offense and alleges that: (1) the defendant knowingly procured; (2) contrary to law; (3)

the naturalization of any person or documentary or other evidence of naturalization or

citizenship; and (4) that the illegal act alleged—making a false statement—was

knowingly done and material. *See* 18 U.S.C. § 1425(a); Eleventh Cir. Crim. Pattern

Jury Instr. O120 (2025); *Maslenjak*, 582 U.S. at 338. Because the indictment tracks the

statutory language and all the essential elements of the offense, the indictment

adequately states a claim and dismissal is unwarranted. *See, e.g., Critzer*, 951 F.2d at

308 ("Constitutional requirements are fulfilled 'by an indictment that tracks the

wording of the statute, as long as the language sets forth the essential elements of the

crime.'" (citation omitted)); *Steele*, 178 F.3d at 1233–34; *Moore*, 954 F.3d at 1332.

In support of the argument that the indictment fails to state an offense, the defendant cites *United States v. Munoz*, 112 F.4th 923 (11th Cir. 2024). Doc. 31, pp. 20–21. But the defendant's reliance on *Munoz* thrice fails. First, *Munoz* involved a motion for a judgment on the pleadings in a civil denaturalization case, not a motion to dismiss in a criminal case brought under 18 U.S.C. § 1425(a). *See Munoz*, 112 F.4th at 930–31. Second, the defendant misstates the holding in *Munoz*, which was not about whether "denaturalization" could "stand" without "proof that the statement was legally material and factually necessary." *See* Doc. 31, p. 21. To the contrary, *Munoz*'s holding was limited to a determination about the availability of collateral and judicial estoppel, and the court expressly stated: "[t]his conclusion says nothing about the government's underlying denaturalization case." *Munoz*, 112 F.4th at 932–37. Third, the defendant contends, relying on Munoz, that "[t]he same result is required here," Doc. 31, p. 21, but the *Munoz* case says nothing about the sufficiency of an indictment in a criminal case or the essential elements of a violation of § 1425(a) and thus it is inapplicable to the defendant's request to dismiss the indictment here.

Additionally, the Motion contains multiple misstatements in arguing that the indictment fails to state an offense. See Doc. 31, pp. 20–22. For example, the Motion says the government has not alleged any facts that the defendant's answer "was necessary to, or played any role in, the decision to grant her citizenship." *Id.* at 21. But the defendant ignores the fact that the indictment alleges that the defendant "knowingly made a *materially false* representation." Doc. 1 (emphasis added). The Motion also states that the indictment "alleges only that Ms. Hoobraj answered 'No'

8

to Question 22 and that she was later charged with wire fraud." Doc. 31, p. 21. But the indictment says nothing about "Question 22" nor anything about the defendant later being charged with wire fraud. Doc. 1. Additionally, the Motion includes a list of things not alleged in the indictment, such as that "she knew she was ineligible for naturalization" and "her conduct was ongoing during the naturalization process." Doc. 31, pp. 21–22. But those things are not required to allege a violation of 18 U.S.C. § 1425(a). Finally, the Motion argues that the indictment "fails to allege the essential elements of knowledge and materiality." Doc. 31, p. 22. But the indictment alleges both: "the defendant . . . did *knowingly* procure, contrary to law, her naturalization . . . having *knowingly* made a *materially false* representation . . . ." Doc. 1 (emphasis added).

The defendant also argues that the indictment should be dismissed because the alleged misrepresentation was not knowing or material under *Maslenjak*. Doc. 31, pp. 4–7, 10–13. Notably, in so doing, the defendant does not cite a single case dealing with a motion to dismiss. *See id.* This is important because whether the defendant acted knowingly and whether the misrepresentation was material are issues for a jury to decide, not proper arguments for a motion to dismiss for failure to state an offense. As discussed above, courts are to consider the indictment on its face, not other allegations or exhibits, in determining whether an offense is sufficiently stated. *See Baxter*, 579 F. App'x at 706; *Salman*, 378 F.3d at 1268. And even the *Maslenjak* case the defendant relies on explicitly discusses that materiality is an issue for a jury to decide. *See Maslenjak*, 582 U.S. at 347 (stating "the issue *the jury must decide* in a case like this one is whether a false statement sufficiently altered those processes as to have

9

influenced an award of citizenship" and that "[t]o decide whether a defendant acquired citizenship by means of a lie, *a jury must evaluate* how knowledge of the real facts would have affected a reasonable government official properly applying naturalization law" (emphasis added)). Accordingly, the defendant's arguments about whether the conduct was knowing and material fail to support dismissal here.[3]

Additionally, although the defendant asserts, without support, that "[e]ven taking the allegations as true, Ms. Hoobraj's answer does not constitute an offense under § 1425(a)," Doc. 31, p. 20, the Motion ignores the fact that the Eleventh Circuit has affirmed convictions for a violation of § 1425(a) in cases involving false statements about whether the defendant had ever committed a crime for which he had not been arrested, which is the conduct alleged here. *See e.g.*, *United States v. Izquierdo*, 853 F. App'x 361 (11th Cir. 2021) (affirming § 1425(a) conviction where defendant was naturalized in 2016 after answering "No" to the question about ever committing a crime but was subsequently convicted after pleading guilty in 2017 to a wire fraud conspiracy ongoing between January 2014 and January 2017); *United States v. Escobar*,

---

[3] Even reviewing the cases the defendant cites and the statements the defendant makes about them does not support the request for dismissal. For example, as done elsewhere in the Motion, the defendant cites *United States v. Munoz* and misstates and misapplies the ruling. *See* Doc. 31, pp. 6–7, 10–13. Additionally, the defendant relies on *Pasillas-Gaytan* for the proposition that "[t]he Government's theory would require applicants to be omniscient about future prosecutorial interpretations of their past conduct- a standard Pasillas-Gaytan expressly rejected." *Id.* at 6. But *Pasillas-Gaytan* says nothing about that; rather, that case centers on whether a violation of § 1425(a) was "knowingly" in light of the defendant's poor understanding of English and limited education. *See United States v. Pasillas-Gaytan*, 192 F.3d 864, 866 (9th Cir. 1999). The same can be said about some of the defendant's factual assertions, such as that there was no investigation pending and no authority had alleged wrongdoing at the time she applied for naturalization. *See* Doc. 31, pp. 6, 11. These statements are not true as the defendant had been questioned by law enforcement in New York before she moved to Florida and applied for naturalization.

735 F. App'x 628 (11th Cir. 2018) (affirming § 1425(a) conviction where defendant was naturalized in 2014 after answering "No" to that same question and another related question but was subsequently convicted in 2015 after pleading guilty to lewd and lascivious conduct against a minor for conduct between 2003 and 2006). Here, then, it follows that viewing the allegations in the indictment in the light most favorable to the government, they are sufficient to charge a violation of 18 U.S.C. § 1425(a), so the Motion should be denied on that basis. *Cf. Torkington*, 812 F.2d at 1354 (noting that courts may only dismiss an indictment if the factual allegations, viewed in the light most favorable to the government, are insufficient to charge the offense as a matter of law).

**B.     The Case Is Not Materially Distinguishable from *Izquierdo***

The defendant also argues that dismissal of the indictment is supported by *United States v. Izquierdo*, 853 F. App'x 361 (11th Cir. 2021). Doc. 31, pp. 7–10. In so doing, the defendant contends *Izquierdo* is "materially distinguishable" from this case because the criminal conduct committed prior to naturalization was ongoing. *Id.* But the defendant makes multiple misstatements about *Izquierdo*. For example, the defendant states: "The temporal overlap between Izquierdo's ongoing criminal conduct and his naturalization process was the critical fact." *Id.* at 8. Later, the defendant states: "Izquierdo stands for the unremarkable proposition that one cannot deny ongoing criminal conduct during the naturalization process." *Id.* at 9. But neither statement is true: that the crime was ongoing was not the critical fact in *Izquierdo*. Nothing in *Izquierdo*—or any other Eleventh Circuit case addressing violations of

11

§ 1425(a)—requires that criminal conduct be ongoing during the naturalization process to support a charge or conviction under § 1425(a).

Contrary to the defendant's position, the Eleventh Circuit has also affirmed a conviction under § 1425(a) when there was no ongoing criminal activity during the naturalization process. In *United States v. Escobar*, the defendant applied for naturalization in 2014 and answered "no" to the question of "Have you ever committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested?" and to a question about forcing sexual contact. *Escobar*, 735 F. App'x 628, 629 (11th Cir. 2018). That defendant was naturalized in late 2014, and then in 2015, he pleaded guilty to six counts of lewd and lascivious conduct against a minor, which occurred between 2003 and 2006. *Id.* There was no ongoing criminal conduct during the naturalization process, and the Eleventh Circuit affirmed the defendant's conviction under 18 U.S.C. § 1425(a) and another offense. *Id.* at 629–31. For these reasons, *Izquierdo* does not support dismissal here.

Here, that the defendant's criminal conduct was not ongoing during the naturalization process is irrelevant to whether the indictment adequately states a violation of § 1425(a). Indeed, the alleged materially false representation contained in the indictment is that the defendant "has never *committed*, assisted in committing, or attempted to commit, a crime or offense for which she was not arrested." Doc. 1 (emphasis). Nothing in the indictment alleges a false statement about ongoing criminal activity nor is any such allegation required to adequately state a claim for a violation of § 1425(a). So this argument for dismissal too fails.

**C.    The Statute, as Applied, Does Not Violate the Fifth Amendment**

The defendant also argues that the statute as applied to the defendant violates the Fifth Amendment because it does not provide fair notice of what conduct is criminal and is void for vagueness given that "it retroactively criminalizes a literally truthful statement." Doc. 31, pp. 15–18. In arguing the statute is unconstitutional, the defendant misstates the government's theory of the case, never references the language of the statute, and completely ignores what the statute criminalizes. *See id.*

Nothing in 18 U.S.C. § 1425(a) criminalizes truthful answers provided during the naturalization process, nor does the indictment allege that the defendant violated § 1425(a) by giving a truthful answer. Section 1425(a) criminalizes "knowingly procur[ing] or attempt[ing] to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." Consistent with the statute, the defendant has been charged with "knowingly" procuring naturalization "contrary to law" by "having knowingly made a materially false representation on her Form N-400, Application for Naturalization, and in sworn statements to immigration and naturalization officials, including that she had never committed, assisted in committing, or attempted to commit, a crime or offense for which she was not arrested." Doc. 1. Applying § 1425(a) to the defendant does not retroactively criminalize a truthful statement: the defendant has been charged with knowingly making a materially false statement about her past criminal conduct. *See id.*

In attempting to argue that the defendant's answer on her Form N-400 was truthful at the time she made it, the defendant contends, without any support, that "a

person of ordinary intelligence reading Question 22 would understand it to ask: 'Have you ever been arrested for any crimes you committed?'" But that is clearly not what the question asks. The question is simple: "Have you EVER committed, assisted in committing, or attempted to commit, a crime or offense for which you were NOT arrested?" Ex. 1, p. 14. The question asks about the commission of a crime for which there was no arrest, not whether the defendant has ever been arrested. And the defendant's unsupported interpretation of the question is belied by the very next question on the Form N-400, which asks: "Have you EVER been arrested, cited, or detained by any law enforcement officer (including any immigration official or any official of the U.S. armed forces) for any reason?" *Id.* Why would any person of ordinary intelligence read Question 22 as asking if the applicant has ever been arrested when Question 23 asks if the applicant has ever been arrested? And if the defendant did not understand the question, why did she certify, under penalty of perjury, that she understood all the questions in the application? *See* Ex. 1, p. 16.

The defendant also makes the baseless assertion that "[u]nder the Government's theory, a prudent applicant would be forced to disclose every business transaction, every statement, and every interaction that could conceivably be later characterized as criminal, even absent any indication that the conduct was unlawful." Doc. 31, p. 18. That is simply not true in light of the statute's requirement that the conduct be done "knowingly"—applicants are required to provide truthful information about their past criminal conduct, and knowingly making materially false representations about that criminal conduct is prohibited. *See* 18 U.S.C. § 1425(a).

14

And here, the government intends to establish that the defendant's representation about her past criminal conduct was false when she made it and that she made it knowingly given the blatantly criminal nature of her fraud scheme and her subsequent guilty plea to "knowingly" engaging in the scheme to defraud that occurred prior to the naturalization process.

The cases the defendant cites also do not support the defendant's argument. While its true that those cases take up constitutional challenges to various statutes, the reasoning for declaring the statutes unconstitutional do not exist here. For example, in *Bouie v. City of Columbia*, the criminal statute was deemed unconstitutional because "[t]he crime for which [they] stand convicted was 'not enumerated in the statute' at the time of their conduct." 378 U.S. 347, 362 (1964). But here, the defendant's charge falls squarely within the conduct enumerated in the statute. *See* Doc. 1; 18 U.S.C. § 1425(a). In *Lanzetta v. State of N.J.*, the criminal statute was deemed unconstitutional because it "condemns no act or omission; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment." 306 U.S. 451, 458 (1939). But here, the defendant has not taken issue with any terms in the statute. *See* Doc. 31, pp. 15–18. And in *Kolender v. Lawson*, the criminal statute was deemed unconstitutional because "it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." 461 U.S. 352, 361 (1983). But the defendant has made so such assertion that the statute here lacks the necessary particularity to advise what a person must do to

15

satisfy the statute. *See* Doc. 31, pp. 15–18.

The defendant further argues that the statute as applied to the defendant violates the Fifth Amendment's right against self-incrimination. Doc. 31, pp. 18–20. The defendant contends that "the Government cannot compel disclosure of uncharged, unarrested conduct and then prosecute her for failing to predict that such conduct would later be characterized as criminal." *Id.* at 18–19. Not only is that not what the defendant is being prosecuted for, but the defendant makes no mention of the statutory language and fails to state how the statute violates the defendant's Fifth Amendment right against self-incrimination.

The defendant is charged with knowingly procuring naturalization contrary to law by knowingly making a materially false representation on her naturalization application and to immigration officials, in violation of 18 U.S.C. § 1425(a). *See* Doc. 1. Nothing in the statute requires waiver of the Fifth Amendment right or compelled testimony, and nothing in the statute provides any punishment or penalty for the assertion of one's Fifth Amendment rights. *See* 18 U.S.C. § 1425(a). No one required the defendant to apply for naturalization or to sit for an interview with immigration officials—these were choices the defendant made. When she chose to apply for naturalization, no one required her to answer every question or to waive her Fifth Amendment rights, and no one penalized her for asserting her Fifth Amendment right against self-incrimination because she did not assert it.

Rather than invoking the Fifth Amendment, the defendant chose to make false statements on her naturalization application and to immigration officials. But "neither

16

the text nor the spirit of the Fifth Amendment confers a privilege to lie." *Brogan v. United States*, 522 U.S. 398, 404 (1998); *see also United States v. Apfelbaum*, 445 U.S. 115, 117 (1980) ("[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely."). What the statute applied here involves is the defendant knowingly making materially false statements for which she had no constitutional right to do. *See* Doc. 1.

The cases the defendant cites also do not support the argument that § 1425(a) as applied here violates the Fifth Amendment. For example, in *Lefkowitz v. Turley*, state statutes were deemed violative of the Fifth Amendment where they required public contracts to include that contractors must waive immunity or answer questions when called to testify concerning his state contracts, otherwise he would be disqualified from transactions with the state for five years. 414 U.S. 70, 71 (1973). But no such requirements or punishments exist in 18 U.S.C. § 1425(a). In *Marchetti v. United States*, the Court found that individuals who asserted the Fifth Amendment right against self-incrimination could not be criminally punished for failure to comply with certain wagering tax provisions that would have in essence required self-incrimination. 390 U.S. 39, 60–61 (1968). But § 1425(a) is not being used to criminally punish the defendant following an assertion of her Fifth Amendment right, and compliance with the requirements of § 1425(a) does not require self-incrimination. And in *Lefkowitz v. Cunningham*, a statute was deemed violative of the Fifth Amendment that required officers of a political party to testify if subpoenaed by a grand jury and if the officer refuses to answer any questions or declines to waive immunity, he is terminated from

his party office and prohibited from holding office for five years. 431 U.S. 801, 802–03 (1977). But again, § 1425(a) does not require testimony and imposes no such sanctions for failing to surrender Fifth Amendment rights. Accordingly, the defendant has not shown how § 1425(a) violates the Fifth Amendment.

In addition to these Fifth Amendment challenges and without reference to any specific portion of the constitution, the defendant argues that the government's theory would create an impossible and unconstitutional standard. Doc. 31, pp. 13–15. The defendant contends the defendant's answer to Question 22 was true when she made it and that "[i]f the Government's theory were accepted, every naturalized citizen would be at risk of denaturalization based on post-naturalization prosecutorial decisions about pre-naturalized conduct." *Id.* at 14. Not so. Again, because § 1425(a) has a "knowingly" requirement, only those who knowingly make materially false representations about their past criminal conduct are at risk of violating the statute as it is charged in this case. *See* 18 U.S.C. § 1425(a). So this argument likewise does not support dismissal of the indictment.

## CONCLUSION

THEREFORE, the United States requests that this Court deny the defendant's

Motion to Dismiss and Motion to Declare Statute as Being Unconstitutional as

Applied to Ms. Hoobraj, Doc. 31.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:   */s/ Sarah Megan Testerman*
      Sarah Megan Testerman
      Assistant United States Attorney
      Florida Bar No. 0124884
      400 W. Washington Street, Suite 3100
      Orlando, Florida 32801
      Telephone:   (407) 648-7500
      Facsimile:   (407) 648-7643
      E-mail: megan.testerman@usdoj.gov

**U.S. v. VEDOUTIE HOOBRAJ**          **Case No. 6:25-cr-119-JA-DCI**

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Matthew Ferry
Counsel for Defendant

/s/ *Sarah Megan Testerman*
Sarah Megan Testerman
Assistant United States Attorney
Florida Bar No. 0124884
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-mail: megan.testerman@usdoj.gov